IN RE ESTATE OF ALMOND CLOW, DECEASED, RESPONDENT, v. CHARLES CLOW, EXCEPTOR, APPELLANT.—167 S. W. (2d) 903.

Kansas City Court of Appeals. November 2, 1942.

*H. H. Jones* and *E. M. Jayne* for appellant.

*Rendlen & White* and *Claude C. Fogle* for respondent.

CAVE, J.—This is an appeal from final judgment of the Circuit Court of Adair County, Missouri. The cause arose in the probate court of Scotland county, by Charles Clow, a beneficiary under the will of deceased, filing written exceptions to certain credits claimed by the executrix in her first semi-annual settlement, her two annual settlements, and her final settlement. The exceptions questioned the legality of about 153 items of credit claimed by the executrix. After these exceptions were filed an affidavit was filed alleging that the probate judge was a material witness in the matter, and in accordance with the statute, section 2444, Revised Statutes 1939, the probate court certified the matter to the circuit court of Scotland county. Thereafter, a change of venue was taken and the cause transferred to the circuit court of Adair county, where the cause was tried before the court, and from the final judgment, the exceptor, Charles Clow, perfected his appeal.

The record discloses that on April 5, 1936, one Almond Clow, died testate in Scotland County, Missouri, leaving Charles Clow, the exceptor, a son, Josephine Clow, a daughter, (the executrix) and Elsie Clow, a daughter, as the sole beneficiaries of his will, except two small bequests made to two grandchildren. Josephine Clow was appointed and qualified as executrix of said will, the terms of which are not

directly involved herein. At the time of his death, Almond Clow owned 265 acres of land in his own right, which was appraised at $4262.50. He also left certain personal property consisting of live stock, farming tools, and household goods which were appraised at the value of $1372.25. The two daughters had always lived with deceased on his farm, and the son lived on a farm nearby. The executrix did not sell the personal property shortly after her father's death, but on the contrary, she and her sister remained on the farm and continued the farm operations about as they had been done prior to the father's death. The live stock and their increase consumed the feed that was raised on the farm, and at various times it was necessary for additional feed to be bought. This operation continued until in June, 1939, when the remaining personal property was sold and the final settlement filed, which caused the filing of the exceptions heretofore referred to. The court sustained 112 of the exceptions, as numbered, and certain items which bore no number, and overruled all other exceptions. By its judgment, the trial court found and ordered—

"that the final settlement of Josephine Clow, the executrix, be modified and corrected so that the executrix be charged therein with the sum of $1372.25, and that the said executrix be credited with the sum of $1492.28, and it is further considered, ordered and adjudged that all other of said exceptions be and the same are hereby overruled, and that the final settlement, as above corrected and modified, be and the same is in all things approved and confirmed. . . ."

The court made certain findings of facts and conclusions of law, which, because of their length, will not be copied herein. The court very diligently and carefully considered all of the various items excepted to and either sustained or overruled each item and after considering the four settlements which had been filed by the executrix, he concluded that she was entitled to credits in the total sum of $1492.28, but in arriving at the total amount of personal property with which the executrix should be charged, he concluded that he could consider only the original inventory as a basis, because the evidence disclosed that the executrix had so commingled the estate property and business with her own private property and business affairs that he could not make an intelligent allocation of the items which should be charged to the estate, and which to the individual. Therefore, he took the original inventory price of the personal property of $1372.25, and charged the executrix with that amount, and having allowed her credits in the sum of $1492.28, there was a balance due her from the estate of $120.03, and ordered that the final settlement be corrected and modified in accordance therewith, and when so corrected and modified, it should be approved and confirmed and the executrix finally discharged. The executrix did not appeal from this judgment. The exceptor (appellant) in effect contends that the court should not take the inventoried price of the personal property as the final charge

against the executrix (respondent), but that he should take into consideration the various items with which she charged herself in the four separate settlements, which charges exceeded $2500, and argues that such items of charge were not in issue in this case and that the only issues involved were the items of credit specifically excepted to by the exceptor.

It is now the settled law in this State that in matters of this kind (exceptions to administrators' settlements), the proceeding is in the nature of an equitable proceeding, and the rules of equity will be applied and the appellate court will hear and determine the matter *de novo*. [In re Helm's Estate, 136 S. W. (2d) 421; Ansley v. Richardson, 95 Mo. App. 332.] It is clear from the record that Josephine Clow, the executrix, and her sister, Elsie Clow, continued to live on and operate the farm after the father's death, without an order of the probate court; they looked after the live stock and all increase therefrom, and employed hired help in carrying on the farming enterprise, purchased feed for the live stock, and generally conducted the farm business the same as if the father had not died, and paid the expenses thereof out of estate money. Such should not have been done without a proper order of the probate court, and the trial court so held, and for that reason sustained all exceptions to claimed credits for labor, seed, feed, etc. in connection with such operation.

But since we are to try the case *de novo*, we are immediately faced with the charge by respondent that the exceptions are not properly before us for consideration because the abstract of the record purporting to set out the exceptions to the various items does not assign any specific reason for objections to the various items, but only makes general charges. The charging part of the exceptions, as shown by the abstract, is as follows:

"Now on this day comes Charles Clow, son of the said Almond Clow, deceased, and one of the beneficiaries under the said will of Almond Clow and entitled to share of said estate on final distribution and states to court that the final settlement filed herein by the executrix is not a true and complete account of said estate and that the semi-annual settlement filed herein, and the two annual settlements filed herein and each of them are not true accounts of the condition of said estate and your petitioner objects to the approval of said final settlement because said semi-annual settlement and annual settlements and this final settlement are not true and the said executrix has not charged herself with all the property belonging to said estate and said executrix has taken credit for items that are not properly charges against said estate and have not been properly filed and allowed against said estate and for the following reasons, to-wit: . . . Here follows objections that the executrix is not entitled to credit for. Items Nos. 2, 3, 5, 6, 7, 11, 12, 14, 16, 18, 19, 22, 24, 25 and 27 in the semi-annual settlement and also not entitled to credit in items 3, 5, 6, etc., of the first annual settlement . . ."

Then follows the same manner of numbering of specific items in the second annual settlement and the final settlement. If that is a clear presentation of the exceptions which were filed in the lower court, and we must assume it is, because it is so set out in the abstract of the record, then there is not before us any specific and definite objection to any particular item in the various settlements. It has been held many times that exceptions to settlements of administrators which merely charge generally that such settlements are not in proper form and are not just and true accounts are a generality, presenting no specific objection. Our Supreme Court very recently so held. [See in re Mills' Estate, 162 S. W. (2d) 807.] Furthermore, the bill of exceptions as preserved in appellant's abstract, sets out in full the four settlements which had been filed in the probate court and also the inventory and appraisement of the real estate and personal property, and then in narrative form sets out in the very briefest terms the testimony of exceptor Charles Clow and executrix Josephine Clow, which evidence, as narrated, deals only with two or three of the one hundred fifty-three items excepted to. Respondent has filed an additional abstract of the record, incorporating evidence which is not included in appellant's abstract, but such additional abstract does, not purport to set out all of the evidence presented to the trial court and in fact it shows on its face that all of such evidence is not included in either abstract because reference is made to an exhibit which was the sale bill of certain personal property, and various vouchers, receipts and probate papers which were identified and presented to the trial court, but which are not incorporated in either of the abstracts before us.

We have carefully read and reread the abstracts filed by appellant and respondent, and have concluded that the evidence contained therein is so meager that we cannot convict the trial court of error in its findings of facts and conclusions of law. We have arrived at such conclusion reluctantly, but are constrained to do so because of the inadequate records presented herein.

Appellant also contends that the circuit court of Adair county had no jurisdiction of this matter because when the matter was certified by the probate court of Scotland county to the circuit court of that county, then no change of venue could be taken. He relies on the case of Cole v. Cole, 89 Mo. App. 228, but the question presented there was entirely different from the present case. In the Cole case, a motion had been filed in the circuit court to modify a prior divorce decree rendered by that court, and the St. Louis Court of Appeals held that a change of venue could not be taken on such motion; but as pointed out by this court in State ex rel. Sharp v. Knight, 26 S. W. (2d) 1011, l. c. 1016, and State ex rel. Bixman v. Denton, 128 Mo. App. 304, the court based its ruling on the theory that it was but a continuation of the original action. That is not the question before us. Our change

of venue statute, section 1058, Revised Statutes Missouri 1939, provides:

"A change of venue may be awarded in *any civil suit* to any court of record for any of the following reasons . . ."

It must be conceded that this proceeding is a *civil suit*; it has all the qualities of a civil suit and none of the features of a criminal proceeding. While this direct question has never before been passed upon in this State, we believe the following cases support such ruling: State ex rel. Anderson Motor Service Co. v. Public Service Commission, 134 S. W. (2d) 1069, affirmed and adopted on *certiorari* (Mo. Sup. Ct.), 154 S. W. (2d) 777, where a change of venue was permitted where a circuit court was reviewing order of Public Service Commission; State ex rel. Bixman v. Denton, *supra,* where circuit court by *certiorari* was reviewing order of county court granting dram shop license. We conclude that the circuit court of Adair county obtained jurisdiction of said cause on change of venue.

We conclude that the judgment of the trial court should be affirmed. It is so ordered. All concur.